Your name: George Uberti

Address:    P.O. Box 5792 Santa Rosa Ca. 95404

Phone Number:    415-948-1040

**FILED** #10
ifp
no

JUL 12 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

Fax Number:

E-mail Address:    georgeuberti@gmail.com

Pro Se   [Select one: *Plaintiff* or *Defendant*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

[*Select one location: San Francisco / Oakland / San Jose / Eureka*]

|  |  |
|---|---|
| George Uberti | **CV 19 - 4025** ◄DMR |
|  | Case Number: |
| Plaintiff(s), | *Title of Document:* |
| vs. | Conspiracy to Monopolize Trade in |
| Sonoma County Board of Supervisors | Sonoma County California |
| And Auditor-Controller- |  |
| Treasurer-Tax Collector |  |
| Defendant(s). |  |

Pg. 1 of 13  Title: Complaint, Conspiracy to Monopolize Trade

**PARTIES**

1. Plaintiff:

   George Uberti

   P.O. Box 5792 Santa Rosa, Ca 95404

   415-948-1040

2. Defendants:

   Defendant 1:

   Sonoma County Board of Supervisors

   575 Administrative Dr. Santa Rosa Ca. 95403

   707-565-2241

   Defendant 2:

   Sonoma County Auditor-Controller-Treasurer-Tax Collector

   585 Fiscal dr. Santa Rosa Ca. 95403

   707-565-2631

**VENUE**

3. Venue is appropriate in this court because the events I am suing about took place in the district of Northern California.

Pg. 2 of 13  Title: Complaint, Conspiracy to Monopolize Trade

**Intradistrict Assignment**

4. Because this lawsuit arose in Sonoma County, it should be assigned to the San Francisco division of this court.

**Jurisdiction**

5. The Single Audit Act of 1984, 31 USC Chapter 75, established requirements for audits of States, local governments, and Indian tribal governments that administer Federal financial assistance programs. 31 USC 7502(c) requires that audits performed in accordance with this section be conducted by an independent auditor in accordance with the Generally Accepted Government Auditing Standards.  In 1985, the Office of Management and Budget (OMB) issued OMB Circular A-128, "Audits of State and Local Governments," to provide implementing guidance. In 1990, OMB administratively extended the single audit process to nonprofit organizations by issuing OMB Circular A-133, "Audits of Institutions of Higher Education and Other Non-Profit Organizations." On July 5, 1996, the President signed the Single Audit Act Amendments of 1996 (31 USC Chapter 75). The 1996 Amendments extended the statutory audit requirement to nonprofit organizations and substantially revised various provisions of the 1984 Act. On June 30, 1997, OMB issued revisions to OMB Circular A-133 (62 FR 35278) to implement the 1996 Amendments, extend the circular's coverage to States, local governments, and Indian tribal governments, and rescind OMB Circular A-128. On June 27, 2003, OMB amended OMB Circular A-133 (68 FR 38401) to increase the audit threshold to an aggregate expenditure of $500,000 in Federal funds and to make changes in the thresholds for cognizant and oversight agencies. Those changes took effect for fiscal years ending after December 31, 2003. OMB further amended the circular on June 26, 2007 (72 FR 35080) to (1) update internal control terminology and related definitions

and (2) simplify the auditee reporting package submission requirement. On December 26, 2013, OMB Circular A-133 was superseded by the issuance of 2 CFR part 200, subpart F. Among other things, those changes increased the audit threshold to $750,000 for auditee fiscal years beginning on or after December 26, 2014 and made changes to the major program determination process. The Compliance Supplement (also referred to as the "Uniform Guidance" ) is based on the requirements of the 1996 Amendments and 2 CFR part 200, subpart F, which provide for the issuance of a compliance supplement to assist auditors in performing the required audits. The Supplement also provides guidance to assist auditors in determining compliance requirements relevant to the audit, audit objectives, and suggested audit procedures for programs not included therein. For single audits, the Compliance Supplement replaces agency audit guides and other audit requirement documents for individual Federal programs. Throughout the Uniform Guidance, the word "must," when used in conjunction with auditor responsibilities, means that the auditor is required to do what the statement indicates. Use of the term "should," when addressing auditor responsibilities, indicates a recommended action or approach. The issuance of the Compliance Supplement referenced herein is effective for audits of fiscal years beginning after June 30, 2015, and supersedes the Compliance Supplement dated June 30, 2015. 2 CFR part 200, subpart F, describes the non-Federal entity's responsibilities for managing Federal assistance programs. (2 CFR subpart F section 200.514) governs the auditor's responsibility with respect to the scope of audit (2 CFR subpart F section 200.215) sets mandatory reporting requirements for auditors relating to audit findings and questioned costs, (2 CFR subpart F section 200.516) sets the requirements for auditor's presentation of audit finding detail and clarity, (2 CFR subpart F section 200.518) sets the criteria for major program determination (2 CFR subpart F

section 200.519) sets the criteria for federal program risk, (2 CFR subpart F section 200.520) sets the requirements for classification of federal auditee risk. Auditors are required to follow the provisions of 2 CFR part 200, subpart F, and the Supplement. Auditors must consider the Supplement and the referenced laws, regulations, and OMB Circulars/Uniform Guidance (whether codified by Federal agencies in agency regulations or adopted or implemented by other means) in determining the compliance requirements that could have a direct and material effect on the programs receiving in excess of $750,000 in federal financial assistance. Although the focus of the Supplement is on compliance requirements that could have a direct and material effect on a major program, auditors also have responsibility under Generally Accepted Government Auditing Standards (GAGAS) for other requirements when specific information comes to the auditors' attention that provides evidence concerning the existence of possible noncompliance that could have a material indirect effect on a major program. During the period covered by the Supplement, most non-Federal entities will have Federal awards expended that are subject to requirements from both the OMB Circulars for federal awards made prior to December 26, 2014 and the Uniform Guidance for federal awards made on or after December 26, 2014. The Uniform Guidance is effective for Federal awards made on or after December 26, 2014 and in incremental funding where Federal agencies change the award terms and conditions. The effective date of the Compliance Supplement for sub-awards is the same as the effective date of the Federal award from which the sub-award is made. The AICPA issued Statement on Auditing Standards (SAS) No. 112, *Communicating Internal Control Related Matters Identified in an Audit* (AICPA, Professional Standards, vol. 1, AU 325), which became effective for audits of periods ending on or after December 15, 2006. With regard to internal control over

Pg. 5 of 13 Title: Complaint, Conspiracy to Monopolize Trade

financial reporting, the SAS introduced and defined the term "control deficiency;" replaced the term "reportable condition" with "significant deficiency." On June 26, 2007 the GAO issued a revision to Government Auditing Standards (GAS) also known as the Generally Accepted Government Auditing Standards (GAGAS) and posted a related notice to its Web site that required the new internal control terminology and definitions to be used in all financial audits performed under GAS as of the effective date of SAS 112. Therefore, to be consistent with the revisions to professional auditing standards, references to "reportable condition" and "material weakness" in internal control over financial reporting related to the audit of the financial statements in Circular A-133 were replaced by the terms "significant deficiency" and "material weakness" as those terms are defined in SAS 112 and GAS. This change was effective for single audits of periods ending on or after December 15, 2006. In section 2.15 GAGAS uses two categories of requirements, identified by specific terms, to describe the degree of responsibility they impose on auditors and audit organizations, as follows: Unconditional requirements: Auditors and audit organizations must comply with an unconditional requirement in all cases where such requirement is relevant. GAGAS uses the word "must" to indicate an unconditional requirement. Presumptively mandatory requirements: Auditors and audit organizations must comply with a presumptively mandatory requirement in all cases where such a requirement is relevant except in rare circumstances. GAGAS uses the word "should" to indicate a presumptively mandatory requirement.

**STATEMENT OF FACTS**

6.   On September 26, 2006 in Sonoma County, the offices of the County Auditor-Controller and Treasurer-Tax Collector were combined into a single office by order of the Sonoma County Board of Supervisors. The Generally Accepted Government Auditing Standards sections 3.01-3.04  require that the auditor maintain the independence of both mind and appearance, defined as the both the state of mind that permits the performance of an audit without being affected by influences that compromise professional judgments and the absence of circumstances that would cause a reasonable and informed third party having knowledge of the relevant information to reasonably conclude that the integrity, objectivity, or professional skepticism of an audit organization have been compromised. (plaintiff declaration pgh.4).

7.   On March 13, 2007 members of the Auditor-Controller-Treasurer-Tax Collector office Rob Boitano and Johnathan Kaldec were appointed as Sonoma County representatives to the California County Tobacco Securitization Agency. Rob Boitano remained in that position until October of 2012 as did Johnathan Kaldec until at least October 21 2014. (plaintiff declaration pgh.5   Exhibit "A" pgs.1,2) Auditors performing work in accordance with the Generally Accepted Government Auditing Standards are expressly prohibited from the performance of investment advisory and management services for audited entity funds in section 3.58 (c)(1).

8.   The interview questions for the position of Sonoma County Auditor-Controller-Treasurer-Tax Collector (Exhibit "G" plaintiff declaration pgh. 16) which were developed according to criteria set out by the Sonoma County Board of Supervisors

(exhibit "F" plaintiff declarations pgh.12)  and attached to the agenda of the December 12, 2011 Sonoma County Board of Supervisors Meeting (exhibit "B")  inquire about the performance  of non-audit activities and responsibilities expressly prohibited to auditors by unconditional requirements of Generally Accepted Government Auditing Standards (plaintiff declaration pgh. 16, exhibit "G").

9.  The three applications to the position of Sonoma County Auditor-Controller-Treasurer-Tax Collector attached to the agenda of the December 12, 2011 Sonoma County Board of Supervisors meeting (Exhibit "F" pg.2, plaintiff declarations pgh.12) at which interviews were conducted, were from then  Interim Sonoma County auditor-Controller-Treasurer-Tax Collector Donna Dunk (Exhibit "C", plaintiff declarations pgh.9),  then Orange County Auditor-Controller David Sundstrom (Exhibit "D", plaintiff declarations pgh.10) , and former Colorado Springs CFO/Financial and Adminsistrative Services Director Terri Valasquez (Exhibit "E", plaintiff declarations pgh.10). The qualifications listed by each of these candidates, (plaintiff declarations pghs.13,14,15) which they presented according to criteria decided upon by the Sonoma County Board of Supervisors (exhibit "F" pg.1, plaintiff declarations pgh.12) each cite participation in non-audit services and responsibilities expressly prohibited by Generally Accepted Government Auditing Standards by the applicants in the performance of duties in their respective positions. All three applications cite responsibility for annual audits which were required to use the GAGAS framework and the performance of investment advisory and management services for audited entity funds, voting empowered board memberships on audit entity boards or committees, the implementation of IT systems and day to day monitoring relevant to material source documentation of audited entity records, and strategic

direction and policy making authority for audited entities all of which are expressly

prohibited non-audit services and responsibilities by GAGAS in sections 3.35, 3.36, 3.54,

3.56, and 3.58.

10. The details of audit findings mandated by 2 CFR part 200 Subpart F are not provided by

the independent auditors for Finding 2017-001 in the Sonoma County Single Audit

Report for the Fiscal Year Ended June 30, 2017. The auditors report no questioned costs

and do not perform audit follow up procedures as outlined in 2 CFR part 200 Subpart F.

(Exhibit "H" p.18, plaintiff declaration pgh.24, 27).

11. The HOME Sonoma County FAQ attachment from the April,17 2019 HOME Sonoma

County Leadership Council meeting (exhibit "J" plaintiff declarations pgh.31) show on

pages 3 and 4 that as of March 21, 2019 a total of 8 out of 23 organizations funded as part

of Sonoma County's Continuum of Care were unaudited. The upper left hand corner on

pg.1 shows that two current Sonoma County Supervisors, Susan Gorin and Lynda

Hopkins, are members of the HOME Sonoma County Leadership Council.

**CLAIMS**

**First Claim**

Federal Law:      15 U.S.C. §1

Defendants:      Sonoma County Auditor-Controller-Treasurer-Tax Collector,

                      Sonoma County Board of Supervisors

1. 15 U.S.C. §1 prohibits every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations. The Sonoma County Board of Supervisors' consolidation of financial responsibility in a single office for Sonoma County Auditor, Controller, Treasurer and Tax Collector , which began on September 26, 2006 and which has been ongoing since that date (plaintiff statement of fact pgh.6 exhibit "A"), constitutes an illegal combination in restraint of commerce. The commerce restrained relates to the effective and accountable administration of government contracts and grant agreements meant to benefit the citizens of Sonoma County, the funds for which are collected, received, distributed, accounted for and audited by that single office. The consolidation of these responsibilities violates, *inter alia,* 15 U.S.C. §1 by effectively charging the auditor with the responsibility to report and correct himself for instances of waste, fraud and abuse in the administration of government grant and contract agreements. Examples of misconduct in financial administration and reporting responsibilities related to this consolidation of duties include but are not limited to the failure by the Sonoma County Board of Supervisors and the office of the Sonoma County Auditor-Controller-Treasurer-Tax Collector to produce the Sonoma County's Annual Single Audit report in accordance with the Generally Accepted Government Auditing Standards intended to

ensure independence and integrity in financial reporting. As a resident of Sonoma County since 2008, who experienced homelessness for a period of one year in Sonoma County in 2010, who except for a roughly 2 year period between 2013 and 2016, has rented housing in Sonoma County from 2008 to the present date in one of the most expensive rental markets in the country, the plaintiff is among the intended beneficiaries of the many services provided for by the government contracts and grant agreements meant to stabilize the housing market he rents in and otherwise provide for a socially and economically stable environment. The plaintiff asserts that but for the grossly negligent auditing and accounting practices directly resulting from the defendants' unlawful combination in restraint of commerce, the injuries to the plaintiff's social and economic standing would not have occurred.

**Second Claim**

Federal Law:   15 USC§2

Defendants:   Sonoma County Auditor-Controller-Treasurer-Tax Collector,

Sonoma County Board of Supervisors

2.   15 USC§2 applies to every person who shall monopolize, attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of the trade or commerce among the several states. 31 U.S.C.§7502 as well as OMB Circular A-133 and the Compliance Supplement require that the Generally Accepted Government Auditing Standards be followed in audits of state and local governments and non-profit

entities that receive federal awards. (plaintiff statement of fact, pgh. 5). The Generally

Accepted Government Auditing Standards require auditors of government contracts and

grant agreements to be independent both in mind and in appearance from the entities they

audit and provide a clear framework for identifying both the unacceptable impairment of

auditor independence and threats to the impairment of auditor independence, which

includes a list of expressly prohibited non-audit activities for auditors performing work in

accordance with GAGAS, which, if participated in automatically impair auditor

independence in to such an extent that no safeguards may reduce those threats to an

acceptable level. The legal requirement of that independence is intended to create

credibility, quality control and assurance in the areas of trade and commerce that the

funds in government contract and grant agreements are intended to affect. The plaintiff

claims that a preponderance of the evidence demonstrates the ongoing knowledge of and

specific intention to create, a restraint in commerce related to government contract and

grant agreements by the defendants through their illegal combination and continuing

operation of the Auditor-Controller-Treasurer-Tax Collector duties in Sonoma County.

As a resident of Sonoma County since 2008, who experienced homelessness for a period

of one year in Sonoma County in 2010, who except for a roughly 2 year period between

2013 and 2016, has rented housing in Sonoma County from 2008 to the present date in

one of the most expensive rental markets in the country, the plaintiff is among the

intended beneficiaries of the many services provided for by the government contracts and

grant agreements meant to stabilize the housing market he rents in and otherwise provide

for a socially and economically stable environment. The plaintiff asserts that but for the

grossly negligent auditing and accounting practices directly resulting from the

Pg. 12 of 13  Title: Complaint, Conspiracy to Monopolize Trade

defendants' unlawful combination in restraint of trade, the injuries to the plaintiff's social and economic standing would not have occurred.

**DEMANDS FOR RELIEF**

1.  The plaintiff asks the court for administrative relief through the separation of the Auditor-Controller-Treasurer-Tax Collector Offices into units which are structurally independent as defined by the requirements of the Generally Accepted Government Auditing Standards and outlined by the California Government Code Title 3 section 2400.

2.  The plaintiff asks the court for monetary relief for damages done to him as a citizen of Sonoma County from this illegal combination in the restraint of trade relating to his costs of housing, his overall economic standing and general well being. The plaintiff leaves dollar amount determination to the court's discretion relating to the severity of its judgment of the defendant's violations of the anti-trust laws and their effects.

Date: _7/10/19_     Sign Name: _George Uberti_
                    Print Name: _George Uberti_

Pg. 13 of 13   Title: Complaint, Conspiracy to Monopolize Trade